ACCEPTED
05-15-00123-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
9/22/2015 1:38:37 PM
LISA MATZ
CLERK

No. 05-15-00123-CV

_____

In the Fifth Court of Appeals
Dallas, Texas

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
9/22/2015 1:38:37 PM
LISA MATZ
Clerk

_____

BRINSON BENEFITS, INC.,

Appellant,

vs.

LINDA HOOPER, SEAN SENDELBACH AND
HOLMES MURPHY & ASSOCIATES, INC.,

Appellees.

_____

Appeal from the 101st Judicial District Court
Dallas County, Texas

_____

**Brief of Appellee Linda Hooper**

_____

James C. Scott
Texas Bar No. 24056287
Gardere Wynne Sewell LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Tel: 214-999-3000
Fax: 214-999-4667
jscott@gardere.com

ATTORNEYS FOR APPELLEE
LINDA HOOPER

**ORAL ARGUMENT REQUESTED**

# List of Parties and Counsel

| Appellant: | Counsel: |
|---|---|
| Brinson Benefits, Inc. | Lu Pham<br>David Speed<br>Cantey Hanger LLP<br>Fort Worth, Texas<br>(Trial Counsel)<br><br>Lyndon F. Bittle<br>Monica Latin<br>Carrington, Coleman, Sloman &<br>Blumenthal, L.L.P.<br>Dallas, Texas<br>(Appellate Counsel) |

| Appellees: | Counsel: |
|---|---|
| Linda Hooper | James C. Scott<br>Gardere Wynne Sewell LLP<br>Dallas, Texas<br>(Trial and Appellate Counsel) |
| Sean Sendelbach and<br>Holmes Murphy & Associates, Inc. | Cody L. Towns<br>The Rodriguez Firm<br>Dallas, Texas<br>(Trial and Appellate Counsel) |

## Table of Contents

List of Parties and Counsel ......................................................................................i

Statement of the Case ........................................................................................viii

Statement of Issues ..............................................................................................ix

Statement of Facts ................................................................................................1

Summary of the Argument.....................................................................................8

Argument..............................................................................................................10

    I.      Standard of Review ...........................................................................10

    II.     Hooper Prevailed on the Theft of Confidential Information Claim.................11

        A.     A defendant that successfully defends a TTLA claim is entitled to attorney's fees ..................................................................12

        B.     Brinson did not prevail on the theft of confidential information claim.................................................................................17

            1.     The trial court allowed Brinson to submit a separate theft claim to the jury ....................................................17

            2.     Brinson did not prevail on the TTLA claim concerning confidential and proprietary information ...............20

        C.     The trial court did not commit reversible error in excluding damages for theft of confidential information........................................23

            1.     Brinson's lost profits damages regarding Door Control were too speculative ....................................................24

            2.     Brinson did not disclose the alternative measure of damages...27

    III.    The Trial Court Awarded a Proper Amount in Attorney's Fees ......................29

        A.     Brinson suffered no injury from the trial court's failure to make factual findings ..................................................................29

        B.     Hooper segregated fees unless legal services advanced both recoverable and unrecoverable claims........................................31

Prayer ..................................................................................................................35

Certificate of Compliance.................................................................................................36

Certificate of Service ........................................................................................................36

Appendix ............................................................................................................................37

# Table of Authorities

**Page(s)**

**CASES**

*7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*,
245 S.W.3d 488 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ......................32

*A&L Eng'g and Consulting, Inc. v. Shiloh Apollo Plaza, Inc.*,
315 S.W.3d 928 (Tex. App.—Dallas 2010, no pet.) ..........................................................32

*Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.*,
150 S.W.3d 682 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ............................12

*Alcatel USA, Inc. v. Cisco Systems, Inc.*,
239 F.Supp.2d 660 (E.D. Tex. 2002) ........................................................................21, 28

*Arrow Marble, LLC v. Killion*,
No. 01-12-01133-CV, 441 S.W.3d 702 (Tex. App.—Houston [1st Dist.]
2014, no pet.) ...........................................................................................................14, 16

*Healthcare Grp., Ltd. v. McShane*,
239 S.W.3d 231 (Tex. 2007) ....................................................................................10, 23

*BBP Sub I LP v. Di Tucci*,
No. 05-12-01523-CV, 2014 WL 3743669 at *4 (Tex. App.—Dallas July 29,
2014, no pet.)........................................................................................................................14

*Bostrom Seating, Inc. v. Crane Carrier Co.*,
140 S.W.3d 681 (Tex. 2004) ............................................................................................10

*Bowie Mem'l Hosp. v. Wright*,
79 S.W.3d 48 (Tex. 2002).................................................................................................23

*Brown v. Kleerekoper*,
No. 01-11-00972-CV, 2013 WL 816393, at *12-14 (Tex. App.—Houston
[1st Dist.] March 5, 2013, pet denied) ...........................................................................16

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) ............................................................................................10

*Cricket Communications, Inc. v. Trillium Indus., Inc.*,
235 S.W.3d 298 (Tex. App.—Dallas 2007, no pet.) ....................................................13

*Edlund v. Bounds*,
   842 S.W.2d 719 (Tex. App.—Dallas 1992, writ denied) ................................................11

*El Apple I, Ltd. v. Olivas*,
   370 S.W.3d 757 (Tex. 2012) ...............................................................................................10

*Epps v. Fowler*,
   351 S.W.3d 862 (Tex. 2011) ..............................................................................12, 14, 15

*ERI Consulting Eng'rs, Inc. v. Swinnea*,
   318 S.W.3d 867 (Tex. 2010) ...............................................................................................25

*Formosa Plastics Corp. v. Presidio Eng'rs and Contractors*,
   960 S.W.2d 41 (Tex. 1998)...................................................................................................25

*Gee v. Liberty Mut. Fire Ins. Co.*,
   765 S.W.2d 394 (Tex. 1989) ...............................................................................................24

*Gharda USA, Inc. v. Control Solutions, Inc.*,
   464 S.W.3d 338 (Tex. 2015) ...............................................................................................26

*Glattly v. Air Starter Components, Inc.*,
   332 S.W.3d 620, 641 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ...............21

*Hawkins v. Walker*,
   233 S.W.3d 380 (Tex. App.—Fort Worth 2007, no pet.) .............................................22

*Holland v. Wal-Mart Stores, Inc.*,
   1 S.W.3d 91 (Tex. 1999) ..............................................................................................10, 11

*Holt Atherton Indus., Inc. v. Heine*,
   835 S.W.2d 80 (Tex. 1992)...................................................................................................25

*Intercontinental Group Partnership v. KB Home Lone Star L.P.*,
   295 S.W.3d 650 (Tex. 2009) ...............................................................................................21

*Interstate Northborough P'ship v. State*,
   66 S.W.3d 213 (Tex. 2001)...........................................................................................23, 24

*Jones v. Frank Kent Motor Co.*,
   No. 02-14-00216-CV, 2015 WL 4965798 (Tex. App.—Fort Worth Aug. 20,
   2015, no pet. hist.) ...............................................................................................................14

*Kellmann v. Workstation Integrations, Inc.*,
332 S.W.3d 679 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ............................21

*King Ranch, Inc. v. Chapman*,
118 S.W.3d 742 (Tex. 2003) ...................................................................................25

*Kroger Tex., Ltd. P'ship v. Suberu*,
216 S.W.3d 788 (Tex. 2006) ...................................................................................25

*Larry F. Smith, Inc. v. The Weber Co., Inc.*,
110 S.W.3d 611 (Tex. App.—Dallas 2003, pet. denied) ..............................................30

*Moak v. Huff*,
No. 04-11-00184-CV, 2012 WL 566140 (Tex. App.—San Antonio Feb. 15,
2012, no pet.) ...............................................................................................12, 15

*Morgan v. Compugraphic Corp.*,
675 S.W.2d 729 (Tex. 1984) ...................................................................................26

*Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*,
821 S.W.2d 283 (Tex. App.—Houston [1st Dist.] 1991, writ denied) .......................31

*Owens-Corning Fiberglas Corp. v. Malone*,
972 S.W.2d 35 (Tex. 1998) .....................................................................................23

*Peoples v. Genco Fed. Credit Union*,
No. 10-09-00032-CV, 2010 WL 1797266 (Tex. App.—Waco May 5, 2010,
no pet). (mem. op.) ...............................................................................................12

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*,
29 S.W.3d 74 (Tex. 2000) .......................................................................................11

*Santiago v. Central Mtg. Co.*,
No. 05-14-00552-CV, 2015 WL 1805048 (Tex. App.—Dallas June 16, 2015,
no pet. h.) .........................................................................................................29, 31

*Southwestern Energy Production Co. v. Berry-Helfand*,
411 S.W.3d 581 (Tex. App.—Tyler 2013, pet. granted) ..............................................13

*Spector, Gadon & Rosen, P.C. v. Sw. Securities, Inc.*,
372 S.W.3d 244 (Tex. App.—Dallas 2012, no pet.) ...................................................11

*Tony Gullo Motors I, L.P. v. Chapa*,
212 S.W.3d 299 (Tex. 2006) ...................................................................................31

*Travel Music of San Antonio, Inc. v. Douglas*,
　　2002 WL 1058527 (Tex. App.—San Antonio May 29, 2002, pet. denied) ...............13

**STATUTES**

TEX. CIV. PRAC. & REM. CODE § 134.002(2) .........................................................................19

TEX. CIV. PRAC. & REM. CODE § 134.003(a)........................................................................21

TEX. CIV. PRAC. & REM. CODE § 134.005(a)........................................................................28

TEX. CIV. PRAC. & REM. CODE § 134.005(b) .......................................................................12

Tex. Pen. Code § 31.01(5)(B) ...............................................................................................19

Tex. Pen. Code § 31.01(5)(C) ...............................................................................................19

**OTHER AUTHORITIES**

TEX. R. APP. P. 44.1(a)(1) ......................................................................................................23

# Statement of the Case

| | |
|---|---|
| Nature of the case: | Brinson Benefits, Inc. ("Brinson") sued its former employee Linda Hooper ("Hooper") for misappropriation of trade secrets, breach of fiduciary duty, conversion, tortious interference, and violation of the Texas Theft Liability Act. Brinson amended its petition to add another former employee Sean Sendelbach ("Sendelbach") and a competitor Holmes Murphy & Associates, Inc. ("Holmes Murphy") on claims of tortious interference and conspiracy. |
| Course of proceedings: | In July 2012, Brinson obtained a TRO and then a temporary injunction against Hooper to protect its confidential information and to prevent Hooper from contacting certain clients until December 1, 2012, at which time the injunction expired. The parties conducted extensive discovery and filed two sets of summary judgment briefing, which were denied by the trial court. The parties tried the case to a jury in September 2014. |
| Disposition below: | The trial court granted direct verdict to the defendants on Brinson's theft of confidential and proprietary information claim. Brinson withdrew its claims for misappropriation of trade secrets and conversion. The jury found Hooper breached her fiduciary duty and committed theft of commissions. The jury awarded Brinson $37,660.01 in actual damages and $500 in statutory damages.<br><br>The parties agreed to submit their claims for attorneys' fees under the Texas Theft Liability Act to the trial court. The court entered judgment on November 6, 2014 awarding Brinson damages found by the jury, plus $100,277.90 in attorney's fees for prevailing on its theft of outside commissions claim. The court also awarded Hooper $388,970.30 in attorneys' fees, and Sendelbach and Holmes Murphy $372,519.76 in attorney's fees for successfully defending Brinson's theft of confidential information claim. |

## Statement of Issues

Brinson complains of the trial court's judgment awarding Hooper attorney's fees as the prevailing party on Brinson's claim for theft of confidential and proprietary information under the Texas Theft Liability Act. Brinson's appeal raises the following issues:

1.     Was Hooper entitled to her attorney's fees for successfully defending herself in two plus years of litigation when the trial court granted directed verdict in her favor at trial as the prevailing party on Brinson's theft of confidential information claim under the Texas Theft Liability Act?

2.     Did the trial court abuse its discretion in excluding evidence of lost profit damages regarding Door Control Services, Inc. when (i) neither Brinson, Hooper or Holmes Murphy had ever secured Door Control Services as a client and (ii) Brinson never presented any evidence that, but for Hooper's alleged theft of confidential information, Door Control Services' owner (and ultimate decision maker) would have decided to leave its insurance broker of eight years to use Brinson?

3.     Did the trial court commit reversible error in failing to issue findings of fact and conclusions of law regarding its award of attorney's fees to Hooper when (i) the only ground to recover those fees was under the theft claim, (ii) the trial court stated in its judgment that the fees were reasonable and necessary, and (iii) Brinson has not shown that it was injured by the error?

4.     Did the trial court abuse its discretion in awarding Hooper her attorney's fees for defending Brinson's theft of confidential information claim when the evidence showed that (i) the fees were reasonable and necessary, (ii) the time associated with the fees advanced Hooper's defense as to all the claims seeking lost profit damages, and (iii) the fees were segregated from the fees associated with Brinson's claim for outside commissions and Hooper's counterclaim for breach of contract?

## Statement of Facts

### Brinson hires Hooper

Brinson is an insurance agency owned by Dawn Brinson that provides employee benefits advisory services, insurance brokerage, insurance advice, and insurance program management. (16 RR 86-87). On or about May 2006, Brinson hired Hooper as an insurance broker (or producer). (14 RR 79; 15 RR 93; 16 RR 88).

Brinson allowed Hooper to choose which clients she wanted to bring to Brinson when she started. (15 RR 90-97). Brinson also allowed Hooper to work out of the office and on her personal laptop – which she did over the next six years. (15 RR 100-101). Hooper did not have a non-compete or non-solicit agreement with Brinson. (14 RR 96). Brinson paid Hooper straight commission based only on the clients that she developed and brought to Brinson. (14 RR 86, 15 RR 98-100).

Hooper brought her larger clients with her to Brinson but chose not to run two smaller clients through Brinson. (15 RR 97-98). Hooper received commissions directly from the carrier on these two clients and certain individuals. (15 RR 90-91; 14 RR 99).

### Hooper wants a life change

In October 2011, Hooper lost her husband to a tragic accident. (15 RR 102-103). Hooper decided to make a life change and pursue other employment options that would allow her to not work as much as she was at Brinson. (15 RR 103-105). Thus, in March 2012, she reached out to and met with her friend and former Brinson

colleague Sendelbach who was working at Holmes Murphy (another insurance agency).  (15 RR 110-111).

In May 2012, Brinson informed Hooper that it was pulling her "get out of jail free card" and that she needed to start producing again.  (14 RR 162; 15 RR 111; Pl's. Ex. 15).  Around that same time, Hooper asked Dawn Brinson for an alternative employment option that allowed her to cut back at work and provided her a residual compensation from her clients if she decided to retire.  (15 RR 109-110).  Dawn Brinson promised to deliver Hooper such a plan.  (15 RR 110).

**Door Control seeks fully funded insurance quotes**

In late May, early June 2012, David Evans, the HR Director for Door Control Services, Inc. ("Door Control") – a prospective client, reached out to Hooper regarding quotes for fully-funded health insurance (as opposed to self-insured).  (14 RR 136, 138; 15 RR 114).  Mr. Evans, who had only been with Door Control for a couple of months, told Hooper that he did not expect Door Control would leave its current broker of eight years and that the likelihood of a change was small because the current broker and owner were good friends.  (17 RR 97).

Nevertheless, Mr. Evans provided Hooper with the necessary private health information regarding Door Control's employees to allow Hooper to seek health insurance quotes from the carriers.  (14 RR 140-143).

On June 29, 2012, Hooper met with Mr. Evans, the CFO and the COO regarding Door Control's health insurance.  (14 RR 150-151).  However, Hooper had

no fully-funded health insurance options to provide because the carriers pulled the quotes prior to the meeting. (15 RR 122-123; 17 RR 93).

**Hooper receives an alternative employment option**

On July 2, 2012, Hooper received an email from Holmes Murphy offering an independent contractor relationship that allowed Hooper to cut back on working and to receive a commission on any clients referred to Holmes Murphy. (15 RR 120-121).

That same day, Hooper met with Dawn Brinson to discuss alternative employment options. (15 RR 17-18; 122). Ms. Brinson provided Hooper with an employment agreement containing a non-compete and a residual compensation plan broken down into different categories. (15 RR 123-125; Dfs.' Ex. 36). Ms. Brinson, however, could not tell Hooper which category she would fit into and Brinson had the ability to unilaterally change the plan at any time. (15 RR 124-125).

At that meeting, Hooper informed Ms. Brinson that she was working on Door Control but that the carriers had pulled the fully-funded insurance quotes and thus there was nothing to present. (15 RR 122-123).

After the meeting, Hooper decided for sure she was leaving Brinson. (15 RR 126).

**Hooper resigns and Door Control decides to explore self-funded quotes**

On July 3, 2012, at roughly 9:00 a.m., Hooper resigned from Brinson. (15 RR 126).

On July 5, 2012, David Evans of Door Control emailed Hooper seeking self-

insured health insurance options instead of fully-funded ones. (15 RR 136; Pl's Ex. 26A). That same day, Door Control gave Hooper a letter of authorization to obtain its private health information regarding its employees. (17 RR 102-103, Pl's Ex. 26B).

**Door Control remains with current broker**

Door Control, however, remained with its current broker of eight years. (17 RR 95). Hooper never met Door Control's owner and ultimate decision maker regarding any health insurance options. (15 RR 114; 17 RR 108).

**The Lawsuit**

On July 9, 2012, Brinson sued Hooper for misappropriation of trade secrets and breach of fiduciary duty, among other claims, and obtained a TRO alleging that Hooper misappropriated Brinson's "trade secrets and confidential/proprietary information." (1 CR 15-29). Brinson's theft claim under the TTLA asserted the following:

> Defendant's conduct constitutes theft of Brinson Benefits' proprietary and confidential information and property. Defendant unlawfully took Brinson Benefits' proprietary and confidential information and property with the intent to deprive Brinson Benefits of it. Brinson Benefits has formally demanded that Defendant return the confidential information and property, but to no avail. As a result, Brinson Benefits has suffered injury.

(1 CR 25).

Brinson requested and obtained a temporary injunction until December 1, 2012 enjoining Hooper from using or disclosing Brinson's alleged confidential, proprietary, and/or trade secret information and from contacting certain clients. (1 CR 53-61). At

4

the hearing, Brinson's counsel stated:

> What we are asking the Court to do today, Your Honor, is to enjoin Ms. Hooper from using Brinson Benefits' confidential and proprietary information or their trade secrets that she possessed and took with her after she left the company. Particularly, Your Honor, the client data sheets.

(3 RR 24).

On August 27, 2012, Brinson filed its amended petition wherein it alleged for the first time in passing that Hooper serviced clients for her own benefit and received commissions outside the company. (1 CR 168). However, Brinson's theft claim under the TTLA did not change – it still concerned confidential and proprietary information. (1 CR 173).

On October 17, 2012, Brinson filed its motion for continuance and extension of the temporary injunction. (1 CR 372-379). Brinson asked the trial court "to extend the Temporary Injunction because it is apparent that Defendants have used, and will continue using, Plaintiff's trade secret/confidential/proprietary information in their attempts to usurp Plaintiff's clients." (1 CR 372). The trial court denied Brinson's motion.

In October 2012 and again in December 2013, the parties filed summary judgment briefing that overwhelmingly discussed and argued the alleged misappropriation of confidential/proprietary and trade secret information and whether there was ever any intent to deprive, any use or disclosure, or any causation and damages resulting therefrom. (1 CR 651, 850, 1693; 2 CR 2260, 2445; 3 CR

5

2687).  The trial court denied those motions.  (1 CR 1768, 1901; 11 RR 64).

On December 20, 2013, Brinson filed its fifth amended petition and its theft claim remained the same from the beginning – theft of Brinson's proprietary and confidential information and property.  (3 CR 2775).

Hooper filed a counterclaim for attorney's fees under the Texas Theft Liability Act.  (2 CR 1964).

**Pre-trial and Trial**

On December 26, 2013, Hooper filed a motion to strike Dawn Brinson as an expert on lost business calculation and valuations extending into the future (allegedly resulting from misappropriation of confidential and trade secret information).  (3 CR 2887).  The trial court agreed that Dawn Brinson was not an expert on future lost profits.  (12 RR 11).

In September 2014, the parties tried the case to a jury.  After the parties rested their case, the trial court granted Hooper's motion for directed verdict on Brinson's theft claim concerning confidential and proprietary information.  (17 RR 249).  The trial court, however, suggested to Brinson and allowed Brinson to submit a separate claim for theft of outside commissions over Hooper's objection that it was never pled as a theft claim.  *Id.*

Brinson withdrew its misappropriation of trade secrets and conversion claims. (18 RR 4-5, 19-20).

On September 10, 2014, the jury entered its verdict and awarded Brinson

6

roughly $31,000 for its theft claim concerning outside commissions. (4 CR 4327). However, Hooper prevailed on Brinson's theft claim concerning confidential and proprietary information whereby Brinson sought hundreds of thousands of dollars in damages against Hooper.

**Post-Trial**

After trial, the parties agreed to submit the determination of attorney's fees to the trial court for decision. (4 CR 4349). On November 6, 2014, the trial court entered judgment and awarded Hooper, Sendelbach and Holmes Murphy reasonable and necessary attorney's fees for successfully defending Brinson's theft of confidential information claim. (Appendix 1). The trial court also awarded Brinson, in addition to the jury award, its attorney's fees in successfully prosecuting it theft of outside commissions claim. *Id.*

## Summary of the Argument

This is an attorney's fees case arising under the Texas Theft Liability Act ("TTLA"). As relevant here, Brinson sued Hooper for theft of confidential and proprietary information under the TTLA. Brinson claimed that the alleged theft of its trade secrets somehow caused it to lose a prospect known as Door Control and thus Brinson sought hundreds of thousands of dollars in lost profit damages. Because there was absolutely no evidence of causation (*i.e.* that Brinson would have secured Door Control as a client), the trial court excluded any evidence associated with Door Control and eventually granted Hooper directed verdict on the theft claim at trial after both sides rested.

Hooper successfully defended Brinson's theft of confidential information claim in over two years of litigation whereby Brinson relentlessly pursued the unfounded belief that it lost over $650,000.00 in lost profits. Thus, pursuant to the TTLA, Hooper is entitled to recover her attorney's fees as the prevailing party. Even though Brinson won on the separate theft claim concerning outside commissions, it unquestionably lost on the theft claim concerning confidential information. Brinson did not suffer actual damages resulting from the alleged theft of confidential information and thus was not the prevailing party.

Brinson's alleged damages for not securing Door Control as a client was speculative and resulted in no evidence. Brinson offered no evidence whatsoever that Door Control's owner and final decision maker would have decided to leave Door

8

Control's insurance broker of eight years and move to Brinson but for Hooper's alleged theft of confidential information. Because of this, and because Brinson offered no expert testimony regarding lost profit damages based on reliable data, the trial court properly excluded the evidence.

The trial court awarded Hooper her attorney's fees under the TTLA for successfully defending the theft of confidential information claim. The trial court, however, failed to issue findings of fact and conclusions of law on the attorney's fees. Nevertheless, Brinson has not shown that it was injured by the trial court's failure. In fact, Brinson is not injured because no one has to guess why the trial court awarded fees to Hooper. There was only one ground for recovery of attorney's fees and that was under the TTLA, as outlined in Hooper's post-trial motion for attorney's fees. Moreover, the trial court specifically stated that based on the directed verdict and his review and consideration of the motion for attorney's fees, he awarded "reasonable and necessary attorneys' fees" to Hooper. Thus, the trial court found and concluded that $388,970.30 in attorney's fees were reasonable and necessary.

Hooper properly segregated recoverable fees from fees associated with defending Brinson's theft of outside commissions claim and prosecuting her breach of contract counterclaim. The remaining fees were so intertwined that they could not be segregated because they related to defending against Brinson's overarching allegation that it had confidential and trade secret information and that taking that information somehow caused it to lose almost a million dollars in lost profit damage.

9

Hooper's attorney's fees were incurred defending these allegations and thus advanced both recoverable and unrecoverable claims.

Hooper asks this court to affirm the trial court's final judgment.

## Argument

### I. Standard of Review.

The availability of attorney's fees under a particular statute is a question of law for the court that is reviewed *de novo*. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). An appellate court reviews a trial court's decision to award attorney's fees for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). The court also reviews whether the trial court properly excluded evidence under an abuse of discretion standard. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007).

In reviewing the grant of a directed verdict, an appellate court follows the standards for assessing the legal sufficiency of the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 809-828 (Tex. 2005). When reviewing a directed verdict, an appellate court must credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *Id.* at 827. An appellate court must determine whether there is any evidence of probative force to raise a fact issue on the question presented. *See Bostrom Seating, Inc. v. Crane Carrier Co.,* 140 S.W.3d 681, 684 (Tex. 2004).

A directed verdict is warranted when the evidence is such that no other verdict

can be rendered and the moving party is entitled, as a matter of law, to a judgment. *Edlund v. Bounds*, 842 S.W.2d 719, 724 (Tex. App.—Dallas 1992, writ denied). A trial court may order a directed verdict in favor of a defendant when: (1) a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery; or (2) the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). A trial court may properly direct a verdict if no evidence of probative force raises a fact issue on the material questions in the lawsuit. *Id.*

With the above standard of review as the setting, Hooper addresses Brinson's arguments in the order that they were presented to this Court. Brinson's appeal concerns the following general issues: (1) whether Hooper is entitled to her attorney's fees as the prevailing party under the TTLA and (2) whether the trial court awarded Hooper a proper amount of attorney's fees.

## II.     Hooper Prevailed on the Theft of Confidential Information Claim.

Brinson argues that the trial court erred by awarding Hooper attorney's fees pursuant to section 134.005(b) of the TTLA because Hooper was not a "person who prevail[ed]" under the statute. Whether a party is entitled to recover attorney's fees under a particular statute is a question of law. *Holland*, 1 S.W.3d at 94. Thus, this court reviews the issue *de novo*. *Spector, Gadon & Rosen, P.C. v. Sw. Securities, Inc.*, 372 S.W.3d 244, 248 (Tex. App.—Dallas 2012, no pet.). As shown below, Hooper prevailed in successfully defending Brinson's theft of confidential information claim

11

and is thus entitled to her attorney's fees in defending that claim.

## A. A defendant that successfully defends a TTLA claim is entitled to attorney's fees.

The TTLA provides that "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." TEX. CIV. PRAC. & REM. CODE § 134.005(b). The award of fees to a prevailing party in a TTLA action is mandatory. *Moak v. Huff*, No. 04-11-00184-CV, 2012 WL 566140, at \*11 (Tex. App.—San Antonio Feb. 15, 2012, no pet.). A defendant who successfully defends a TTLA suit is entitled to recover his fees. *See Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.,* 150 S.W.3d 682, 684 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Peoples v. Genco Fed. Credit Union*, No. 10-09-00032-CV, 2010 WL 1797266, at \*7 (Tex. App.—Waco May 5, 2010, no pet). (mem. op.). A prevailing defendant is entitled to attorney's fees "without any prerequisite that the claim is found to be groundless, frivolous, or brought in bad faith." *Air Routing Int'l Corp.*, 150 S.W.3d at 686.

The phrase "person who prevails," as used in section 134.005(b) of the TTLA, is not defined in the TTLA, and no other provision of the Act sheds light on the meaning of the phrase. *See* TEX. CIV. PRAC. & REM. CODE § 134.005(b). Courts have looked to the term "prevails" ordinary meaning to determine its scope for both statutory and contractual claims. *See e.g., Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011) (construing written contract to give meaning to undefined term "prevailed"

while noting the phrase "prevailing party" is given its ordinary meaning and has been explicated through statutory interpretation by many courts).

Brinson's position is that Hooper cannot be a prevailing party until the case is fully litigated on the merits and she establishes that she did not commit theft. (Brinson's Br., pp. 20, 23). Brinson relies on an unreported San Antonio court of appeals' opinion wherein the plaintiff dismissed its TTLA claim without prejudice nine months before trial. *See Travel Music of San Antonio, Inc. v. Douglas*, 2002 WL 1058527 at *3 (Tex. App.—San Antonio May 29, 2002, pet. denied). The court in that case reversed the trial court's award of attorney's fees to the defendants because the case was not fully litigated. *Id.*; *see also Cricket Communications, Inc. v. Trillium Indus., Inc.*, 235 S.W.3d 298, 310-311 (Tex. App.—Dallas 2007, no pet.) (plaintiff nonsuited TTLA claim without prejudice and defendants did not plead for attorney's fees under the TTLA).

Here, Brinson prosecuted its theft of confidential information claim all the way through trial and the trial court granted directed verdict in favor of Hooper on that claim after both sides rested. The theft of confidential information claim was fully litigated and Hooper prevailed by successfully defending the claim. *See Southwestern Energy Production Co. v. Berry-Helfand*, 411 S.W.3d 581, 614 (Tex. App.—Tyler 2013, pet. granted) (appellate court reversed the jury's finding in favor of the plaintiff on the theft claim due to no evidence and remanded the case to the trial court for the determination and award of attorney's fees to the defendant as the prevailing party

13

under the TTLA); *see also Jones v. Frank Kent Motor Co.*, No. 02-14-00216-CV, 2015 WL 4965798 at *3 (Tex. App.—Fort Worth Aug. 20, 2015, no pet. hist.) (counter-defendant successfully defended against counter-plaintiff's theft claim and was therefore the prevailing party).

Regardless, other cases show that the TTLA claim does not have to be fully litigated, nor does the defendant have to establish that she did not commit theft. For example, in *BBP Sub I LP v. Di Tucci*, this Court affirmed the trial court's award of attorney's fees to the defendant as the prevailing party even though the plaintiff nonsuited its TTLA claim without prejudice. No. 05-12-01523-CV, 2014 WL 3743669 at *4 (Tex. App.—Dallas July 29, 2014, no pet.) (mem. op.). This Court relied on *Epps*, 351 S.W.3d at 869 in holding that a defendant is entitled to attorney's fees under the TTLA as a "person who prevails" after a plaintiff voluntarily nonsuits without prejudice, if the trial court determines that the nonsuit was taken to avoid an unfavorable ruling on the merits. *Di Tucci*, 2014 WL 3743669 at *4. In *Di Tucci*, the record reflected that the plaintiff voluntarily dismissed the TTLA claim to avoid an unfavorable judgment on the merits. *Id.*

Further, a TTLA claim dismissed with prejudice for want of prosecution permits the defendant to qualify as a prevailing party under the TTLA statute. *See Arrow Marble, LLC v. Killion*, No. 01-12-01133-CV, 441 S.W.3d 702, 708 (Tex. App.—Houston [1st Dist.] 2014, no pet.). In *Arrow Marble*, the court determined that res judicata attaches to a dismissal with prejudice even though the plaintiff's claims have

not been fully litigated at trial. *Id.* at 707. Thus, the legal relationship between a plaintiff and defendant changes because res judicata prohibits the plaintiff from re-asserting his claims against that defendant in a later suit. *Id.*; *see also Epps*, 351 S.W.3d at 867.

Here, Brinson's theft of confidential information claim was dismissed on directed verdict after it was fully litigated. Such a ruling altered the parties' legal relationship to Hooper's benefit. Hooper can never again be sued by Brinson for theft of confidential information. Thus, Hooper prevailed on that claim.

Brinson also argues that since Hooper did not prevail on the entire suit, she should not be entitled to attorney's fees under the TTLA as the prevailing party. (Brinson's Br., p. 18-19). Brinson's assertion is wrong. In *Moak v. Huff*, the defendant lost on the plaintiff's DTPA claim but successfully defended against the plaintiff's TTLA claim. 2012 WL 566140, at *1. The defendant sought an award of attorney's fees under the TTLA. *Id.*, at *9. The plaintiff resisted, arguing that a person does not "prevail in a suit" unless he is the "party in whose favor a judgment is rendered" and is "vindicated by the judgment." *Id.*, at *10. The plaintiff maintained that the defendant had to prevail on the entire suit to recover attorney's fees under the TTLA. *Id.*

The court of appeals disagreed, holding that "a person who prevails in a TTLA cause of action is entitled to recover the reasonable fees necessarily incurred prosecuting or defending the cause of action, even if the party is unsuccessful on

15

other claims and counterclaims litigated in the same suit." *Id.*, at *11; *see also Arrow Marble, LLC*, 2014 WL 2958278, at *3-4 (defendant was prevailing party on theft claim dismissed with prejudice even though it failed to obtain judgment on its breach of contract claim).

Moreover, in *Brown v. Kleerekoper*, the defendant was considered the prevailing party under the TTLA when she prevailed on one TTLA claim, lost on another TTLA claim, and lost on a breach of contract claim. No. 01-11-00972-CV, 2013 WL 816393, at *12-14 (Tex. App.—Houston [1st Dist.] March 5, 2013, pet denied). In that case, the plaintiff argued that by successfully prosecuting two claims out of three, he prevailed on the main issue, even though not to the extent of his original contention. *Id.* at *12. The court of appeals rejected the plaintiff's argument and stated "[w]e agree with the San Antonio court that a party who prevails on a TTLA cause of action is entitled to recover attorney's fees, even though that party may not have prevailed on other causes of action asserted in the suit." *Id.* at *14. Thus, the court of appeals upheld the award of attorney's fees to the defendant for successfully defending herself on the theft of property claim under the TTLA. *Id.*

The trial court granted Hooper a directed verdict on Brinson's theft of confidential and proprietary information claim. Hooper, not Brinson, prevailed on that particular claim, as discussed further below.

16

**B. Brinson did not prevail on the theft of confidential information claim.**

Brinson argues that it actually prevailed on the TTLA claim because (1) it asserted only one theft claim for which the jury returned a verdict in its favor or (2) it received some relief on the merits of its theft of confidential information claim through the temporary injunction. (Brinson's Br. pp. 21-25). Brinson's arguments fail for the reasons stated below.

**1. The trial court allowed Brinson to submit a separate theft claim to the jury.**

Brinson alleges that it asserted only one TTLA claim and that it prevailed on that claim. (Brinson's Br. pp. 21-22). The fact of the matter is that Brinson *pled* only one TTLA claim – theft of confidential and proprietary information and property – and it was dismissed on directed verdict in favor of Hooper as the prevailing party. (17 RR 249). The trial court, however, allowed Brinson to submit to the jury a separate TTLA claim for theft of outside commissions. *Id.* Hooper objected to the newly created TTLA claim, but the court overruled the objection. (18 RR 14-15). Hooper does not appeal the court's ruling on her objection. Thus, there ended up being two separate theft claims, one for theft of confidential and proprietary information and property (*i.e.* trade secrets) and another for theft of outside commissions (*i.e.* money received by Hooper directly from carriers). Hooper prevailed on the first one, and Brinson prevailed on the second one. The first one – theft of confidential information – is at issue in this appeal in determining whether

17

Hooper is entitled to her attorney's fees for successfully defending the claim.

Brinson tries to confuse this Court by merging the later created TTLA claim concerning outside commissions into its originally pled TTLA claim concerning confidential information. Brinson's original petition only asserted a TTLA claim for theft of "proprietary and confidential information and property." (1 CR 25). At that point, outside commissions was not even an issue in the case. Instead, the case concerned the alleged misappropriation and theft of trade secrets and confidential information regarding Brinson's clients, vendors, and data. (1 CR 15-29). Brinson sought and obtained temporary injunctive relief on the allegation that Hooper misappropriated "confidential, proprietary and/or trade secret information." (1 CR 26, 53-61, 97-101).

It was not until Brinson's first amended petition that it alleged for the first time in passing in the facts section that Hooper serviced clients for her own benefit and received commissions outside the company. (1 CR 168). However, Brinson's theft claim never changed, it was always theft of "proprietary and confidential information and property." (1 CR 173, 428, 1915; 2 CR 2179; 3 CR 2775).

At trial (and throughout the case), Brinson testified to the confidential and trade secret nature of its information (*i.e.* client data and hot sheets) and how Hooper allegedly stole the information through a "bulk update" from Brinson's server to her laptop before she resigned. (16 RR 129-132, 150-172, 295-297; *see also* 15 RR 60-61, 75). When the trial court asked Brinson's counsel what property do you contend

18

Brinson was deprived of in regards to its theft claim, Brinson's counsel answered "it is the bulk update of the data would be the property, and that data included the Pinnacle data." (17 RR 248). In fact, Brinson's proposed jury charge concerning damages for theft did not ask for disgorgement of the outside commissions. (4 CR 4130-4131).

The TTLA claim had nothing to do with outside commissions, and instead concerned only confidential and proprietary information. It was not until both sides rested and the trial court granted Hooper directed verdict on the theft of confidential and proprietary information claim that a new and separate claim for theft of outside commissions was allowed by the court. (17 RR 249). The new theft claim came in and was submitted to the jury over Hooper's objection. (18 RR 14-16). Thus, the case ended up with two different theft claims.

Brinson argues that the claims are one in the same. However, theft of proprietary and confidential information is completely different than theft of outside commissions (or money). The theft of confidential information is identified under Tex. Pen. Code § 31.01(5)(B) and the theft of outside commissions is identified under Tex. Pen. Code § 31.01(5)(C). *See* TEX. CIV. PRAC. & REM. CODE § 134.002(2).

Further, the two theft claims involved different sets of facts. Brinson's theft of confidential information claim involved proving (i) the trade secret nature of its client data and hot sheets and other client information, (ii) that the information was part of the alleged "bulk update" from Brinson's server, (iii) that Brinson was deprived of its information, and (iv) that the alleged theft of the information caused it to lose clients

19

(or a prospect) resulting in lost profits damages. Brinson's theft of outside commissions claim, on the other hand, involved commissions (or money) that Hooper received directly from the carrier on other clients she personally serviced, without running those commissions through Brinson, and that Brinson sought to disgorge.

Moreover, the two theft claims involved different measure of damages. Brinson's damage model sought $658,616.00 in lost profits for theft and misappropriation of confidential information, whereas it sought $82,882.69 in disgorgement for outside commissions. (3 CR 2911; 4 CR 4369-4370). At trial, Brinson sought $306,596.71 in lost profits for its theft and misappropriation of confidential information claims (16 RR 318-327) compared to $79,882.69 in disgorgement for outside commissions (16 RR 227-231). The lost profits calculation allegedly dealt with historical data and retention rates of clients to determine the damage number associated with losing clients and a prospect (*i.e.* Door Control). (16 RR 318-327). The disgorgement calculation simply dealt with the return of money Hooper received directly from servicing other clients. (16 RR 227-231).

The two TTLA claims are completely different – they were asserted at different times, involved different facts and sought different measures of damages.

### 2. Brinson did not prevail on the TTLA claim concerning confidential and proprietary information.

Brinson next argues that it prevailed on the theft of confidential information

claim because it received some relief through the temporary injunction. (Brinson's Br. pp. 23-25). Brinson, however, refuses to acknowledge that it suffered a dismissal of its theft of confidential information claim at trial on directed verdict and thus received nothing by way of damages. Thus, Brinson did not prevail on that claim – Hooper did.

The TTLA provides that a person "who commits theft is liable for the damages resulting from the theft." TEX. CIV. PRAC. & REM. CODE § 134.003(a). In addition, under the TTLA a person "who has sustained damages" may recover the amount of actual damages found by the trier of fact. *Id.* § 134.005(a)(1). In *Glattly v. Air Starter Components, Inc.*, the court held that the plaintiff was not a prevailing party because the jury found no damages for the violations of the TTLA. 332 S.W.3d 620, 641 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *see also Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 654-55 (Tex. 2009) (a party does not prevail on a breach of contract claim when the jury finds a breach of contract but answers "0" for damages); *Kellmann v. Workstation Integrations, Inc.*, 332 S.W.3d 679, 686 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that no damages precluded an award of attorney's fees because plaintiff was not a prevailing party); *Alcatel USA, Inc. v. Cisco Systems, Inc.*, 239 F.Supp.2d 660, 676 (E.D. Tex. 2002) (when no damages in any form are recoverable, the plaintiff is not a prevailing party).

Also, the *Glattly* court noted in response to the plaintiff's argument that it was the prevailing party because it received injunctive relief, that the TTLA does not

authorize injunctive relief. *Glattly*, 332 S.W.3d at 641. The court went on to state that the only relief provided for by the TTLA is actual damages and that is the only relief the plaintiff requested from the jury, which the jury denied by finding "0" for actual damages. *Id.*; *see also Hawkins v. Walker*, 233 S.W.3d 380, 400 & n. 73 (Tex. App.— Fort Worth 2007, no pet.) (stating, "[C]ourts have construed this phrase ['prevailing party'] to mean that the party must recover at least some of the relief sought by its claim.").

Brinson did not seek injunctive relief at trial. Brinson sought lost profit damages on its theft of confidential information claim, and it lost. Brinson cannot claim prevailing party status through a temporary injunction whereby the court concluded that Brinson "will likely succeed" on the merits of its claims at trial concerning misappropriation of trade secrets. (1 CR 97). As we know now, Brinson did not succeed on its theft of confidential information claim. Moreover, Brinson withdrew its claims for misappropriation of trade secrets and conversion. The TTLA provides relief for only actual damages and Brinson sought only actual damages in the form of lost profits on its theft of confidential information claim at trial and it lost on directed verdict. Brinson had two years to form a logical damage model supported by competent evidence and it never did. Thus, Hooper successfully defended the theft of confidential information claim and is the prevailing party on that claim.

## C. The trial court did not commit reversible error in excluding damages for theft of confidential information.

Brinson argues that the trial court erred in excluding damages for the alleged theft of confidential information related to Door Control because (1) there was some evidence that Brinson "could have secured" Door Control as a client and thus obtain lost profit damages or (2) there was some evidence of alternative measure of damages beyond lost profits. (Brinson's Br., pp. 25-34). Brinson's arguments, however, fail because there was no competent evidence that, but for Hooper's alleged theft, Brinson would have secured Door Control as a client. Aside from the speculation that Brinson could have obtained Door Control as a client, there was also substantial uncertainty as to the amount of damages Brinson actually suffered. Thus, the trial court properly excluded any damages regarding Door Control.

The decision to admit or exclude evidence lies within the trial court's sound discretion. *Bay Area Healthcare Grp., Ltd.*, 239 S.W.3d at 234. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). An appellate court must sustain the trial court's ruling if there is any legitimate basis for the ruling. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

To obtain reversal of a judgment based on the trial court's error in excluding or admitting evidence, the complaining party must show that the error probably resulted

in an improper judgment. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); TEX. R. APP. P. 44.1(a)(1). An appellate court must review the entire record to determine whether the excluded evidence resulted in the rendition of an improper judgment. *Interstate Northborough P'ship*, 66 S.W.3d at 220. The trial court's error in the exclusion of evidence generally will not be reversible unless the excluded proof is "controlling on a material issue." *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989).

Here, the trial court had a legitimate basis for excluding evidence regarding damages for Door Control because the fact of the matter is Brinson was never going to secure Door Control as a client once Hooper left. (15 RR 6-7; 17 RR 150). Even if there was any evidence that Brinson could have obtained Door Control as a client (which there was not), Brinson's alleged damages for lost profits were too speculative and not based on expert opinion.

### 1. Brinson's lost profits damages regarding Door Control were too speculative.

Brinson sought lost profit damages related to Door Control on its claims, including theft of confidential information. (4 CR 4369). The trial court, however, excluded evidence of damages concerning Door Control because it was an undisputed fact that Door Control never moved its business from its broker of eight years to Brinson, Hooper or Holmes Murphy. (12 RR 12; 16 RR 327-328). Moreover, the trial court struck Dawn Brinson as an expert on lost profit damages because she did

24

not have the expertise or training to calculate future lost profits. (12 RR 11; 16 RR 321-322). The trial court acted within his discretion in excluding the evidence of lost profits damages regarding Door Control and had a legitimate basis for doing so as discussed below.

Lost profit estimates or opinions must be based on objective facts, figures, or data from which the lost profits amount may be ascertained. *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010). When a review of the surrounding circumstances establishes that the profits are not reasonably certain, there is no evidence to support the lost profits. *Formosa Plastics Corp. v. Presidio Eng'rs and Contractors*, 960 S.W.2d 41, 50 n.3 (Tex. 1998). "[T]he bare assertion that contracts were lost does not demonstrate a reasonably certain objective determination of lost profits." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 85 (Tex. 1992).

A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Evidence that is "'so weak as to do no more than create a mere surmise or suspicion' that the fact exists" is less than a scintilla. *Kroger Tex., Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006) (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).

Brinson's belief that it could have obtained Door Control as a client even if Hooper left on good terms was complete speculation and did not rise above surmise or suspicion. David Evans, Door Control's HR Director, testified that the company owner was the ultimate decision maker regarding insurance brokers and no one knows if the owner would have approved a different insurance broker. (17 RR 110). Brinson never deposed Door Control's owner and thus offered no evidence whatsoever from the owner as to whether he would have changed brokers to go with Brinson. There was simply no evidence to establish the causal nexus between the alleged wrongful act and the alleged damages. *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984) (the causal nexus between the event sued on and the plaintiff's injuries must be shown by competent evidence).

David Evans testified that the likelihood of Door Control changing brokers was small and he did not expect that Door Control would leave its current broker. (17 RR 97). Mr. Evans further stated that he himself had no desire to deal with anyone at Brinson besides Hooper and once she left he did not want to use Brinson. (17 RR 100, 107). In fact, after Hooper left, Brinson never even tried to contact Door Control to earn its business. (17 RR 146). Brinson was never going to secure Door Control as a client once Hooper left. (16 RR 327-328).

Furthermore, even if the alleged evidence of Door Control damages was allowed in the trial, the evidence was insufficient to show any amount of reasonably certain lost profits, based on objective facts, figures, or data. The trial court struck

26

Dawn Brinson as an expert. (12 RR 11). Thus, there was no expert analysis or opinion on the alleged lost profits associated with Door Control. *See Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 348 (Tex. 2015) (proof other than expert testimony will support a jury finding only when the jurors' common understanding and experience will allow them to make that finding with reasonable probability).

Brinson's only evidence on lost profits was from Ms. Brinson's conclusory testimony that Door Control would have generated revenue of $60,000 a year. (16 RR 323-327). However, that number was based on an assumed estimation from Hooper. (17 RR 148-149). Brinson did not do any independent work to verify the reasonableness or reliability of the estimated revenue number, nor did Brinson offer any other evidence in support of its assumptions regarding the revenue associated with Door Control.

Brinson offered no competent evidence to establish with reasonably probability that it would have secured Door Control as a client. Moreover, Brinson's evidence on damages was unreliable and mere speculation. Thus, the trial court did not commit reversible error in excluding any damages associated with Door Control.

### 2. *Brinson did not disclose the alternative measure of damages.*

Brinson argues that it should have been allowed to present alternative measure of damages attributable to Hooper's alleged conduct. (Brinson's Br. pp. 28-34). Brinson, however, never disclosed its alleged alternative measure of damages prior to trial and only did so once it realized its lost profit damages were too speculative.

Thus, for this reason (and others), the court's exclusion of the evidence was proper.

At trial, Brinson tried to submit evidence regarding the alleged value of the Door Control file by calculating the time Hooper spent on the file. (16 RR 238-239; 17 RR 64, 139-146). The trial court excluded the evidence because (i) it was never disclosed as a damage model to Hooper or Holmes Murphy and (ii) Brinson did not pay Hooper for any time spent on the Door Control file – Hooper was only paid a commission if she secured a client. (17 RR 143-146). As we know, Door Control never became a client of any party in this case.

Brinson also tried to submit evidence regarding fees incurred to assess the risk of a possible HIPPA violation. (16 RR 147, 206-214). The trial court excluded the evidence because there was no evidence to suggest that there was ever any improper dissemination of HIPPA information. (16 RR 208, 213-214). Moreover, Brinson never claimed that there was a HIPPA violation. Also, Brinson never asserted the alleged fees as a damage model in its disclosures. (16 RR 147; 4 CR 4369-4370). Thus, the trial court did not abuse its discretion in excluding these alternative measures of damages.

Brinson also argues that statutory damages are available under the TTLA, and thus the jury should have been allowed to consider such damages for the alleged theft of confidential information. (Brinson's Brief, p. 29). However, an award of statutory damages is contingent upon an award of actual damages. *See Alcatel USA, Inc. v. Cisco Systems, Inc.*, 239 F.Supp.2d 660, 674 (E.D. Tex. 2002) (citing *Rodgers v. RAB*

*Investments, Ltd.*, 816 S.W.2d 543, 551 (Tex. App.—Dallas 1991, no writ)); Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 134.005(a). Brinson's inability to recover actual damages thus precludes its recovery of statutory damages pursuant to the express language of section 134.005(a).

The trial court properly excluded evidence regarding damages related to Door Control because it was complete speculation that Brinson could have secured Door Control as a client. There was never any causation evidence to connect the dots between the alleged theft of confidential information and damages associated with the belief that Brinson could secure Door Control as a client – which it did not, and never has. Accordingly, Hooper prevailed on directed verdict and is entitled to her attorney's fees for defending the claim for over 2 years.

## III. The Trial Court Awarded a Proper Amount in Attorney's Fees.

Brinson argues that the attorney's fees awarded to Hooper must be vacated and remanded because the trial court failed to make factual findings and Hooper allegedly failed to segregate recoverable from unrecoverable fees. (Brinson's Br. p. 39). Brinson's arguments are discussed in turn below.

### A. Brinson suffered no injury from the trial court's failure to make factual findings.

Brinson contends the trial court erred by failing to file findings of fact and conclusions of law, despite timely requests to do so. (Brinson's Br., pp. 39-41).

Brinson, however, does not explain how it was injured or prevented from properly presenting its case to this Court. The trial court's error was harmless.

When properly requested, the trial court has a mandatory duty to file findings of fact and conclusions of law. *Santiago v. Central Mtg. Co.*, No. 05-14-00552-CV, 2015 WL 1805048 at *4 (Tex. App.—Dallas June 16, 2015, no pet. h.) (mem. op.). If the trial court fails to file findings of fact and conclusions of law after a proper request, the failure is presumed harmful unless the record affirmatively shows the complaining party suffered no injury. *Id.*

The general rule is that an appellant has been harmed if, under the circumstances of the case, it has to guess at the reason the trial court ruled against it. *Larry F. Smith, Inc. v. The Weber Co., Inc.*, 110 S.W.3d 611, 614 (Tex. App.—Dallas 2003, pet. denied). If there is only a single ground of recovery or a single defense, an appellant does not usually have to guess at the reasons for the trial court's judgment. *Id.* When there are two or more possible grounds of recovery or defense, an appellant is forced to guess what the trial court found unless the trial court's findings are provided to it. *Id.*

Here, as Brinson admits, the only claim that Hooper could have recovered attorney's fees on is theft of confidential information. No one has to guess as to why the trial court awarded Hooper attorney's fees. Hooper's motion for attorney's fees discussed in detail why she should be awarded fees and all parties know why she was awarded fees – she prevailed on the theft of confidential information claim. (4 CR

4350-4359) (Appendix Tab 2). The trial court specifically stated in the Judgment that based on his "ruling on directed verdict" and "review and consideration of the parties' motions for attorneys' fees and accompanying affidavits," the trial court awarded Hooper "reasonable and necessary attorneys' fees of $388,970.30." (Appendix Tab 1). As Brinson acknowledged in its proposed jury charge, the only factual finding needed is "[w]hat is a reasonable fee for the necessary services . . ." (4 CR 4163). The trial court expressly found and concluded that $388,970.30 in attorney's fees was reasonable and necessary in successfully defending Brinson's theft of confidential information claim. Thus, based on the record, findings of fact were not necessary and any error by the trial court in failing to file findings of fact and conclusions of law was harmless. *See Santiago*, 2015 WL 1805048, at *4. Moreover, Brinson does not explain and the record does not show how Brinson was prevented from properly presenting its case to this Court or how it otherwise suffered injury from the alleged error.

**B.  Hooper segregated fees unless legal services advanced both recoverable and unrecoverable claims.**

Brinson argues that Hooper's counsel failed to segregate fees between claims for which they are recoverable and claims for which they are not. (Brinson's Br. pp. 41-44). Hooper's counsel, however, submitted a six-page affidavit describing why the fees were reasonable and necessary and how he segregated the fees. (4 CR 4383-4388) (Appendix Tab 3). Brinson does not explain why the segregation was wrong.

31

The amount of an award of attorney's fees rests in the sound discretion of the trial court, and its judgment will not be reversed on appeal without a clear showing of abuse of discretion. *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 288 (Tex. App.—Houston [1st Dist.] 1991, writ denied). A prevailing party generally has a duty to segregate recoverable from unrecoverable attorney's fees. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). However, a party is not required to segregate attorney's fees if "discrete legal services advance both a recoverable and unrecoverable claim," thus causing the fees to become "so intertwined that they cannot be segregated." *Id.* at 313-14; *A&L Eng'g and Consulting, Inc. v. Shiloh Apollo Plaza, Inc.*, 315 S.W.3d 928, 931 (Tex. App.—Dallas 2010, no pet.). If any task relates solely to a claim for which legal fees are not recoverable, the claimant must segregate the fees. *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 509 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

As explained to the trial court, and as further discussed here, Brinson filed this lawsuit and aggressively prosecuted it for over two years on the premise that Hooper stole Brinson's confidential and trade secret information, deprived Brinson of it, and then used or disclosed it causing Brinson to lose over $650,000.00 in profits. (4 CR 4350-4359) (Appendix Tab 2). All of Brinson's claims, except for outside commissions, revolved around this premise and/or sought lost profits for the alleged conduct. (3 CR 2760-2781). Brinson referred to the "bulk update" throughout the litigation and alleged that Hooper stole its trade secret and confidential information

(*i.e.* client data and hot sheets). (3 RR 14-17, 14 RR 18; 15 RR 57, 61, 75-76). Brinson sought only lost profit damages based on clients lost or a prospect that it did not obtain. (4 CR 4369). The legal tasks performed in this case advanced Hooper's defense on these claims that there was simply no causal nexus between the alleged conduct and the alleged injury for lost profits.

Hooper's counsel's affidavit regarding attorney's fees described in detail how he determined the reasonable and necessary attorney's fees for defending against the allegation that Hooper's conduct somehow caused Brinson to lose hundreds of thousands of dollars in lost profits. (4 CR 4383-4388) (Appendix Tab 3). Hooper's counsel attached all of the billing records to the affidavit and explained how he segregated the fees. (4 CR 4389-4471).

First, counsel determined that fees for defending the theft of confidential, proprietary and/or trade secret information on specific tasks that had nothing to do with outside commissions was $102,978.00. (4 CR 4386-4387) (Appendix Tab 3). As explained, these tasks and services in attending certain hearings and depositions, and the related motions and responses, concerned Brinson's claims seeking lost profits damages and thus advanced Hooper's causation defense on both recoverable and unrecoverable claims. *Id.* These tasks did not relate solely to a claim for which legal fees were not recoverable.

Second, counsel determined that the remaining fees concerned a mix of time spent on (i) the alleged theft of confidential/proprietary/trade secret information, (ii)

33

nonpayment of outside commissions claim, and (iii) the breach of contract counterclaim. After reviewing the billing records, counsel determined that 75% of the time was spent on the first category, 20% spent on the second, and 5% spent on the last category. (4 CR 4387-4388) (Appendix Tab 3). Based on the percentage breakdown, counsel determined that $311,736.75 in fees was reasonable and necessary in defending the theft of confidential information claim.

Counsel then added the two sets of fees to reach the requested amount of $414,714.75 in attorney's fees for defending the theft of confidential information claim. (4 CR 4388). As explained in the affidavit, the time spent defending the theft of confidential information claim was inextricably intertwined with the time spent on the other claims, except for time regarding outside commissions. (4 CR 4387). In other words, the legal services advanced both recoverable and unrecoverable claims and thus additional segregation was not required. The trial court properly considered the evidence and determined in his discretion the "reasonable and necessary" attorney's fees.

Hooper's counsel adequately segregated the attorney's fees where he could and stated that the remaining fees were so intertwined because they advanced the overall defense that Brinson did not suffer any lost profit damages due to Hooper's alleged conduct. The trial court considered the evidence and properly awarded Hooper her attorney's fees for successfully defending the allegation that she stole confidential and trade secret information.

34

## Prayer

Hooper asks this court to affirm the trial court's final judgment and to award Hooper her attorney's fees and costs on appeal.

Respectfully submitted,

*/s/ James C. Scott*
James C. Scott
Texas Bar No. 24056287
Gardere Wynne Sewell LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Tel: 214-999-3000
Fax: 214-999-4667
jscott@gardere.com

ATTORNEYS FOR APPELLEE
LINDA HOOPER

## Certificate of Compliance

I certify that, in accordance with Texas Rule of Appellate Procedure 9.4, the number of words contained in this document is 9,101 according to the computer program used to prepare this document.

/s/ *James C. Scott*
James C. Scott

## Certificate of Service

I certify that a copy of this brief was served by ECF Notice and email to the following on September 22, 2015:

Lyndon F. Bittle
Monica W. Latin
Carrington, Coleman, Sloman & Blumenthal, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202

Cody L. Towns
The Rodriguez Firm
1700 Pacific, Suite 3850
Dallas, Texas 75201

/s/ *James C. Scott*
James C. Scott

# Appendix

1.   Final Judgment, November 6, 2014

2.   Defendant Linda Hooper's Motion for Attorneys' Fees, October 17, 2014

3.   Affidavit of James C. Scott, October 16, 2014

# APPENDIX 1

## Final Judgment – November 6, 2014

451F 000289

No. DC-12-07520-E

| | | |
|---|---|---|
| BRINSON BENEFITS, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | DALLAS COUNTY, TEXAS |
| LINDA HOOPER, SEAN SENDELBACH, | § | |
| AND HOLMES MURPHY & | § | |
| ASSOCIATES, INC., | § | |
| | § | |
| Defendants. | § | 101ST JUDICIAL DISTRICT |

## FINAL JUDGMENT

On September 2, 2014, this case was called for trial. Brinson Benefits, Inc. ("Plaintiff") appeared through its attorney and announced ready for trial. Linda Hooper ("Defendant Hooper"), Sean Sendelbach ("Defendant Sendelbach"), and Holmes Murphy & Associates, Inc. ("Defendant Holmes Murphy") appeared through their respective attorneys and announced ready for trial.

After a jury was impaneled and sworn, it heard the evidence and arguments of counsel. In response to the jury charge, the jury made findings that the Court received, filed, and entered of record. Based on (i) the jury's verdict, (ii) the Court's ruling on directed verdict, and (iii) the Court's review and consideration of the parties' motions for attorneys' fees and accompanying affidavits, the Court had determined that judgment should be rendered as set forth below. It is, therefore,

**ORDERED, ADJUDGED AND DECREED** that Plaintiff have and recover from Defendant Hooper the following amounts:

4939

a) actual damages in the amount of $38,160.01;

b) pre-judgment interest at the rate of 5% per annum from the date of suit through November 5, 2014, in the amount of $4,438.06;

c) reasonable and necessary attorneys' fees of $100,277.90, plus contingent attorneys' fees in the following amounts: an additional $50,000 in the event this judgment is appealed to by Defendant Hooper to the Court of Appeals and this portion of this judgment is affirmed by the Court of Appeals; an additional $15,000 in the event a petition for review of this case is filed in the Supreme Court of Texas by Defendant Hooper and such petition is denied; and, an additional $35,000 in the event a petition for review of this case is granted by the Supreme Court of Texas by Defendant Hooper and this portion of this Judgment is affirmed; and,

**IT IS FURTHER ORDER, ADJUDGED AND DECREED** that Defendant Hooper have and recover from Plaintiff reasonable and necessary attorneys' fees of $388,970.30, plus contingent attorneys' fees in the following amounts: an additional $50,000 in the event this judgment is appealed to by Plaintiff to the Court of Appeals and this portion of this judgment is affirmed by the Court of Appeals; an additional $15,000 in the event a petition for review of this case is filed in the Supreme Court of Texas by Plaintiff and such petition is denied; and, an additional $35,000 in the event a petition for review of this case is granted by the Supreme Court of Texas and this portion of this Judgment is affirmed.

**IT IS FURTHER ORDER, ADJUDGED AND DECREED** that Defendants Sendelbach and Holmes Murphy have and recover from Plaintiff reasonable and necessary attorneys' fees of $372,519.76, plus contingent attorneys' fees in the following amounts: an additional $50,000 in the event this judgment is appealed to by Plaintiff to the Court of Appeals and this portion of this judgment is affirmed by the Court of Appeals; an additional $15,000 in the event a petition for review of this case is filed in the Supreme Court of Texas by Plaintiff and

such petition is denied; and, an additional $35,000 in the event a petition for review of this case is granted by the Supreme Court of Texas and this portion of this Judgment is affirmed.

Costs of Court borne by Plaintiff and Defendant Hooper shall be taxed against the party by whom incurred. Costs of court incurred by Defendants Sendelbach and Holmes Murphy shall be taxed to the Plaintiff.

All sums awarded herein shall bear post-judgment interest at the rate of 5% per annum from the date of this Judgment until paid.

All relief requested and not expressly granted herein is denied. The Court intends this judgment to dispose of all parties and all claims, and to be final and appealable.

SIGNED this 6th day of November, 2014.

JUDGE PRESIDING

# APPENDIX 2

Defendant Linda Hooper's Motion for
Attorneys' Fees - October 17, 2014

CAUSE NO. 12-07520

| | | |
|---|---|---|
| **BRINSON BENEFITS, INC.,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **101ST JUDICIAL DISTRICT** |
| | § | |
| **LINDA HOOPER, SEAN SENDELBACH,** | § | |
| **AND HOLMES MURPHY & ASSOCIATES,** | § | |
| **INC.,** | § | |
| | § | |
| **DEFENDANTS.** | § | **DALLAS COUNTY, TEXAS** |

## <u>DEFENDANT LINDA HOOPER'S MOTION FOR ATTORNEYS' FEES</u>

### I.     REQUESTED RELIEF

Defendant Linda Hooper ("Ms. Hooper") requests her attorneys' fees for successfully defending Plaintiff Brinson Benefits, Inc.'s ("Brinson") theft claim under the Texas Theft Liability Act ("TTLA") concerning confidential, proprietary and trade secret information.

### II.     INTRODUCTION

Brinson sued Ms. Hooper for civil theft, among other claims, alleging that Ms. Hooper stole Brinson's confidential and proprietary information with the intent to deprive Brinson of that information and allegedly caused Brinson to lose a prospect and several clients resulting in hundreds of thousands of dollars in damages to Brinson. From the beginning of the lawsuit until trial, Brinson referred to this claim (in addition to the misappropriation of trade secrets and conversion claims) as the "bulk update" of information from Brinson's server before Ms. Hooper resigned. Brinson alleged throughout two-plus years of litigation that Ms. Hooper used or disclosed Brinson's client data sheets or hot sheets that caused Brinson damages. Ms. Hooper incurred hundreds of thousands of dollars in attorneys' fees in defending Brinson's theft of confidential information claim, including without limitation fees spent on two temporary injunction hearings concerning theft of confidential information, discovery concerning

confidential information, forensic analysis on Ms. Hooper's laptop concerning confidential information, motion to seal confidential information, summary judgment briefing regarding confidential information, and defending Brinson's lost profits analysis related to the alleged theft of such confidential information. Ms. Hooper prevailed on that theft claim when the Court granted directed verdict as to theft of confidential and proprietary information. Then, at the jury charge conference, Brinson withdrew its claims for misappropriation of trade secrets and conversion – which concerned the alleged misappropriation of Brinson's confidential information. Ms. Hooper seeks her attorneys' fees and costs for prevailing on Brinson's civil theft claim regarding confidential and proprietary information.

### III. PROCEDURAL BACKGROUND

1. The procedural timeline below shows the pleadings and hearings concerning the alleged theft, use, disclosure and protection of confidential, proprietary and/or trade secret information.

2. On July 9, 2012, Brinson sued Ms. Hooper for misappropriation of trade secrets and breach of fiduciary duty, among other claims, alleging that Ms. Hooper misappropriated Brinson's "trade secrets and confidential/proprietary information."[1] Brinson's theft claim under the TTLA asserted the following:

> Defendant's conduct constitutes theft of Brinson Benefits' proprietary and confidential information and property. Defendant unlawfully took Brinson Benefits' proprietary and confidential information and property with the intent to deprive Brinson Benefits of it. Brinson Benefits has formally demanded that Defendant return the confidential information and property, but to no avail. As a result, Brinson Benefits has suffered injury.

3. On July 23, 2012, the Court held a temporary injunction hearing wherein Brinson requested the Court to prevent and enjoin Ms. Hooper from using or disclosing Brinson's alleged

---

[1] *See* Brinson's original petition filed on July 9, 2012 on the Court's docket.

confidential, proprietary, and/or trade secret information. In particular, Brinson's counsel stated:

> What we are asking the Court to do today, Your Honor, is to enjoin Ms. Hooper from using Brinson Benefits' confidential and proprietary information or their trade secrets that she possessed and took with her after she left the company. Particularly, Your Honor, the client data sheets.[2]

4.       On that same day, Brinson filed a motion to temporarily seal confidential and proprietary information.[3]       Thereafter, the parties exchanged several phone calls and correspondence and held a hearing regarding what information to seal and whether certain information could be redacted to prevent the unnecessary burden of sealing the whole record.

5.       In July 2012, the Court requested a forensic examination of Ms. Hooper's laptop. The parties retained an expert to review and provide analysis on Ms. Hooper's laptop. After August 2012 and up until the time of trial in September 2014, Ms. Hooper incurred additional attorneys' fees in analyzing and responding to Brinson's continued requests for additional computer forensics on Ms. Hooper's laptop, carbonite account, emails, etc. Brinson never even called or used the forensic expert at the September 2014 trial.

6.       On August 7, 2012, the Court entered a temporary injunction stating that Ms. Hooper was enjoined from using or disclosing Brinson's confidential, proprietary, and/or trade secret information.[4] After Ms. Hooper's motion to modify and a hearing on the same, the Court entered a modified temporary injunction to (i) specifically identify the clients that Ms. Hooper was enjoined from contacting for a period of time, and (ii) require Ms. Hooper to turn over external devices regarding confidential and proprietary information.[5]

7.       On August 27, 2012, Brinson filed its amended petition wherein it alleged for the first time in passing that Ms. Hooper serviced clients for her own benefit (and for Holmes

---

[2] *See* July 23, 2012 hearing transcript, p. 24, attached hereto as Exhibit "A."

[3] *See* Brinson's motion to seal court records filed July 23, 2012 on the Court's docket.

[4] *See* temporary injunction dated August 7, 2012 on the Court's docket.

[5] *See* modified temporary injunction dated September 10, 2012.

Murphy's benefit).[6] However, Brinson's theft claim under the TTLA did not change – it still concerned confidential and proprietary information.

8.      On September 10, 2012, the Court entered an order on Brinson's motion to seal court records that Brinson considered confidential and proprietary.[7]

9.      On October 17, 2012, Brinson filed its motion for continuance and extension of the temporary injunction.[8] Brinson asked the Court "to extend the Temporary Injunction because it is apparent that Defendants have used, and will continue using, Plaintiff's trade secret/confidential/proprietary information in their attempts to usurp Plaintiff's clients." The Court denied Brinson's motion.

10.     On October 26, 2012, Brinson filed its second amended petition and its theft claim remained the same – theft of Brinson's proprietary and confidential information and property.[9]

11.     In October 2012 and again in December 2013, the parties filed summary judgment briefing that overwhelmingly discussed and argued the alleged misappropriation of confidential/proprietary and trade secret information and whether there was ever any intent to deprive, any use or disclosure, or any causation and damages resulting from that information. The Court denied those motions.

12.     On March 1, 2013, Brinson filed its third amended petition and its theft claim remained the same – theft of Brinson's proprietary and confidential information and property.[10]

13.     On June 10, 2013, Brinson filed its fourth amended petition and its theft claim

---

[6] *See* Brinson's first amended petition filed August 27, 2012 on the Court's docket.

[7] *See* Order on Motion to Seal Court Records dated September 10, 2012 on the Court's docket.

[8] *See* motion for continuance and extension of temporary injunction filed October 17, 2012 on the Court's docket.

[9] *See* Brinson's second amended petition filed on October 26, 2012 on the Court's docket.

[10] *See* Brinson's third amended petition filed on March 1, 2013 on the Court's docket.

remained the same – theft of Brinson's proprietary and confidential information and property.[11]

14. On December 20, 2013, Brinson filed its fifth amended petition and its theft claim remained the same – theft of Brinson's proprietary and confidential information and property.[12]

15. On December 26, 2013, Ms. Hooper filed a motion to strike Dawn Brinson as an expert on lost business calculation and valuations extending into the future (allegedly resulting from misappropriation of confidential and trade secret information).[13] On that same day, Brinson filed a motion to limit Ms. Hooper's expert's testimony regarding future lost profits.[14] The Court agreed that Dawn Brinson was not an expert on future lost profits.

16. In September 2014, the parties tried the case to a jury. After Brinson rested its case, the Court granted Ms. Hooper's motion for directed verdict on Brinson's theft claim concerning confidential and proprietary information. Thereafter, Brinson withdrew its misappropriation of trade secrets and conversion claims.

17. On September 10, 2014, the jury entered its verdict and awarded Brinson roughly $31,000 for its theft claim concerning outside commissions (which Ms. Hooper objected to because such claim was not pled in the petition under the TTLA). However, Hooper prevailed on Brinson's theft claim concerning confidential and proprietary information whereby Brinson sought hundreds of thousands of dollars in damages against Ms. Hooper.[15]

## IV. ARGUMENTS AND AUTHORITIES

The TTLA provides that "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(b). The award of fees to a prevailing party in a TTLA action is

---

[11] *See* Brinson's fourth amended petition filed on June 10, 2013 on the Court's docket.

[12] *See* Brinson's fifth amended petition filed on December 20, 2013 on the Court's docket.

[13] *See* Hooper's motion to strike filed on December 26, 2013 on the Court's docket.

[14] *See* Brinson's motion to limit filed on December 26, 2013 on the Court's docket.

[15] *See* Brinson's second amended disclosures attached hereto as Exhibit "B" wherein it sought over $550,000.00 plus an additional $100,000.00+ in actual damages and $3,000,000.00 in punitive damages.

mandatory. *Brown v. Kleerekoper*, No. 01-11-00972-CV, 2013 WL 816393 at *5 (Tex. App.—Houston [1st Dist.] Mar. 5, 2013, pet. filed) (mem. op.). The TTLA requires the court to award attorney's fees to a prevailing defendant "without any prerequisite that the claim is found to be groundless, frivolous, or brought in bad faith." *Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 686 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

In *Moak v. Huff*, No. 04-11-00184-CV, 2012 WL 566140, at *11 (Tex. App.—San Antonio, Feb. 15, 2012, no pet.) (mem. op.), the defendant lost on the plaintiff's DTPA claim but successfully defended against the plaintiff's TTLA claim. *Id.*, 2012 WL 566140, at *1. The defendant then sought an award of attorney's fees under the TTLA. *Id.*, at *9. The plaintiff resisted, arguing that a person does not "prevail in a suit" unless he is the "party in whose favor a judgment is rendered" and is "vindicated by the judgment." *Id.*, at *10. The plaintiff maintained that the defendant had to prevail on the entire suit to recover attorney's fees under the TTLA. *Id.*

The court of appeals disagreed, holding that "a person who prevails in a TTLA cause of action is entitled to recover the reasonable fees necessarily incurred prosecuting or defending the cause of action, even if the party is unsuccessful on other claims and counterclaims litigated in the same suit." *Id.*, at *11; *see also Arrow Marble, LLC v. Killion*, No. 01-12-01133-CV, 2014 WL 2958278, at *3-4 (Tex. App.—Houston [1st Dist.] July 1, 2014, no pet.) (defendant was prevailing party on theft claim dismissed with prejudice).

Similarly, in *Brown v. Kleerekoper*, the defendant was considered the prevailing party under the TTLA when she prevailed on one TTLA claim, lost on another TTLA claim, and lost on a breach of contract claim. *Kleerekoper*, 2013 WL 816393, at *5. The court of appeals stated "[w]e agree with the San Antonio court that a party who prevails on a TTLA cause of action is entitled to recover attorney's fees, even though that party may not have prevailed on other causes

of action asserted in the suit. *Id.* Thus, the court of appeals upheld the award of attorney's fees to the defendant for successfully defending herself on the theft of property claim under the TTLA. *Id.*

Here, Ms. Hooper successfully defended herself on the theft of confidential and proprietary information claim under the TTLA. The Court granted directed verdict on that claim and dismissed it as a matter of law. Thereafter, Brinson withdrew all of its claims concerning misappropriation of confidential information or trade secrets (i.e. misappropriation of trade secrets and conversion). Brinson filed this lawsuit on the grounds that Ms. Hooper stole all of its confidential, proprietary, and/or trade secret information and used or intended to use it. Ms. Hooper spent close to $100,000 in attorneys' fees defending herself on these claims before Brinson ever alleged non-payment of outside commissions – which Brinson only alleged in passing in its second amended petition. As shown in the procedural timeline above, Brinson focused most of its case on the alleged theft, use, disclosure and protection of confidential, proprietary and/or trade secret information. The procedural timeline shown above has nothing to do with the theft of outside commissions. Moreover, Brinson sought over $650,000.00 in actual damages and $3,000,000.00 in punitive damages against Ms. Hooper for the alleged use and disclosure of confidential/proprietary/trade secret information that allegedly caused Brinson to lose a prospect and 9 clients. After this lawsuit had been on file for nearly two months, Brinson asserted a claim for outside commissions for the first time which it only sought roughly $82,000 for. The outside commission number was small in comparison to Brinson's lost profit claims for confidential and proprietary information of over $650,000.00.

Further, the massive amount of discovery conducted on gathering and producing the alleged confidential, proprietary and/or trade secret information took considerable attorney time.

Moreover, Brinson took the following depositions concerning the potential use or disclosure of confidential, proprietary and/or trade secret information: two depositions of Sean Sendelbach, two depositions of Den Bishop (Holmes Murphy), deposition of Oni Blodgett (Holmes Murphy), deposition of Steve Gwinn (Holmes Murphy), deposition of Ellen Willadsen (Holmes Murphy), deposition of Jacki Crain Power (Northwestern Benefits), deposition of David Evans (Door Control Services), deposition of Mary McMillan (Plano Sports Authority), and Gary Durham (Hooper's future lost profits expert). None of these depositions (11 of them) concerned outside commissions; instead, they concerned the alleged use and disclosure of confidential information. Ms. Hooper defended herself on the theft claim of confidential information because she never used or disclosed any information and/or there was never any causation or damages to Brinson. Also, there was never any intent to deprive because all of the information was on Brinson's server. Nevertheless, Brinson was relentless in pursuing those claims and sought close to $700,000.00 in damages from Ms. Hooper up and until the Court granted directed verdict on the theft claim and Brinson withdrew its misappropriation of trade secrets and conversion claims. These are the claims that made up the majority of the case and that Brinson argued time and time again – alleging that Ms. Hooper had Brinson's client data sheets, hot sheets and other confidential information that she allegedly used to cause Brinson to lose a prospect and several clients.

Even though Ms. Hooper did not prevail on the nonpayment of outside commissions (which was not plead as a theft claim) or breach of fiduciary duty regarding Pinnacle, she did prevail on the theft of confidential, proprietary and/or trade secret information – which is the theory that Brinson brought this suit on (i.e. alleging that Ms. Hooper had Brinson's confidential and trade secret information and intended to use it) and required Ms. Hooper to incur hundreds

of thousands of dollars in attorneys' fees to defend herself. Ms. Hooper is entitled to recover her attorneys' fees for prevailing on the theft of confidential information.

As shown in James C. Scott's affidavit attached hereto as Exhibit "C," Ms. Hooper seeks $414,714.75 in attorneys' fees and $18,886.86 in costs for successfully defending the theft of confidential/proprietary/trade secret information claim.

## V.     CONCLUSION

Ms. Hooper successfully defended herself after over two years of fighting Brinson's theft of confidential, proprietary, and/or trade secret information claim. Thus, Ms. Hooper requests the Court to award her the attorneys' fees for defending the theft claim. Ms. Hooper further requests any relief, at law or in equity, to which she is justly entitled.

Respectfully submitted,

/s/ James C. Scott
James C. Scott
Texas State Bar No. 24056287
**GARDERE WYNNE SEWELL LLP**
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

**ATTORNEYS FOR LINDA HOOPER**

## CERTIFICATE OF CONFERENCE

On October 16, 2014, I conferred with the plaintiff's counsel by email regarding the relief requested in this motion. Plaintiff's counsel is opposed to the relief requested in this motion. Thus, this motion is presented to the Court for decision.

/s/ James C. Scott
James C. Scott

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2014, a true and correct copy of the foregoing document was served upon all counsel of record pursuant to the Texas Rules of Civil Procedure.

| | |
|---|---|
| Lu Pham<br>David Speed<br>Cantey Hanger LLP<br>600 W. 6th Sreet, Suite 300<br>Fort Worth, Texas 76102<br>Facsimile: (817) 877-2807<br>Email: lpham@canteyhanger.com<br>dspeed@canteyhanger.com | *Via Email* |
| Cody L. Towns<br>The Rodriguez Law Firm<br>1700 Pacific Ave., Suite 3850<br>Dallas, Texas 75201<br>Facsimile: (214) 220-2920<br>Email: CTowns@TheRodriguezFirm.com | *Via Email* |

/s/ James C. Scott
James C. Scott

# APPENDIX 3

## Affidavit of James C. Scott - October 16, 2014

CAUSE NO. 12-07520

| | | |
|---|---|---|
| **BRINSON BENEFITS, INC.,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| | § | **DALLAS COUNTY, TEXAS** |
| **V.** | § | |
| | § | |
| **LINDA HOOPER, et al.,** | § | |
| | § | |
| **Defendants.** | § | **101ST JUDICIAL DISTRICT** |

<u>AFFIDAVIT OF JAMES C. SCOTT</u>

BEFORE ME, the undersigned notary public, on this date personally appeared James C. Scott, who known to me to be the person whose name is subscribed below, being duly sworn, deposed and said:

1.      "My name is James C. Scott. I am over the age of twenty-one (21) years, am fully competent to provide this affidavit and have personal knowledge of the facts stated herein, facts which are true and correct.

2.      I am an attorney with the law firm of Gardere Wynne Sewell LLP ("Gardere") and have served as lead legal counsel for Linda Hooper ("Ms. Hooper") in this case. I am familiar with the usual and customary work performed in representing parties in business litigation, and a significant amount of my practice has been devoted to such disputes.

3.      Ms. Hooper retained my services and those of Gardere to represent her in connection with the defense of Plaintiff's claims against her. In this connection, Ms. Hooper agreed to pay reasonable and necessary attorneys' fees for Gardere's services. Ms. Hooper's most recent amended pleading in this case and her Motion for Attorneys' Fees filed herewith articulates the basis for her claim for attorneys' fees, which are recoverable under the applicable law – the successful defense of Plaintiff's theft claim under the Texas Theft Liability Act concerning confidential/proprietary/trade secret information.

4.      I graduated from the South Texas College of Law in 2006, and have been admitted to practice in the State of Texas since November 2006. From the date of my admittance before the State Bar of Texas to the present, I have practiced law within the state of Texas and with Gardere in Dallas, Texas. A large part of my legal experience has been representing clients in litigation in state and federal courts throughout Texas. As a result, I am familiar with the reasonable and necessary attorneys' fees charged in Texas for legal services.

5.      I am also familiar with the legal services rendered in connection with this case, the necessity of such services and the reasonable charge for those services. In determining the reasonableness of the fees for the services Gardere rendered herein, I have considered the following standards set forth in TEXAS DISCIPLINARY R. PROF. CONDUCT 1.04, *reprinted in* TEX.

AFFIDAVIT OF JAMES C. SCOTT

**EXHIBIT**
**C**

PAGE 1

4383

GOV'T CODE, tit. 2 subtit. G app. (State Bar Rules, Art. 10 § 9) and *Arthur Andersen v. Perry Equipment Corp.*, 945 S.W.2d 812 (Tex. 1997): (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee charged in the locality for similar legal services; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; and (10) the nature and length of the professional relationship with the client.

6.       Having considered the nature and extent of the services supplied by Gardere, the value of the services according to the customary fee and quality of the legal work and the other *Arthur Anderson* factors as described below, Ms. Hooper simply asks for reimbursement of the costs, fees and expenses incurred in connection with defending Plaintiff's theft claim under the Texas Theft Liability Act ("TTLA") concerning confidential, proprietary and/or trade secret information that the Court granted directed verdict on.

7.       The costs, fees and expenses incurred by Ms. Hooper in defending the theft claim in this case are commensurate with a case of this size.

a.       *The time and labor required.* The Plaintiff's counsel relentlessly prosecuted this case which had the result of (at least) imposing time and expense burdens on Ms. Hooper's counsel to defend the theft claim concerning confidential and proprietary information as follows:

i.       Attending two hearings regarding Plaintiff's application for a temporary injunction, one hearing regarding a motion to modify the temporary injunction, and one hearing regarding Plaintiff's request to extend the temporary injunction. The temporary injunction concerned enjoining Ms. Hooper from using or disclosing confidential, proprietary and/or trade secret information that Plaintiff's sought millions of dollars in damages against Ms. Hooper for;

ii.      Attending to computer forensic analysis of Ms. Hooper's laptop to determine the extent of confidential information and whether there was any use or disclosure of same. After the temporary injunction hearing, Plaintiff continued to seek computer forensics on Ms. Hooper's laptop, carbonite account, and emails for confidential information that required additional attorney time;

iii.     Attending to the sealing of court records that Plaintiff asserted as confidential, proprietary and/or trade secret;

iv.      Drafting on two different occasions motions for partial summary judgment and responses to motions for partial summary judgment that overwhelmingly concerned theft or misappropriation of

confidential, proprietary and/or trade secret information, and arguing the same at one hearing;

v. Drafting and arguing a motion to strike Plaintiff's expert on future lost profits resulting from the alleged use or disclosure of confidential, proprietary or trade secret information;

vi. Attending to numerous depositions concerning Plaintiff's allegations of use or disclosure of confidential, proprietary and/or trade secret information;

vii. Collecting and responding to Plaintiff's discovery requests for confidential, proprietary and/or trade secret information, and use and disclosure of same; and

viii. Trying the case to a jury that mainly concerned misappropriation and theft of confidential, proprietary, and/or trade secret information that Ms. Hooper allegedly used to take a prospect (i.e. Door Control Services) and several clients.

Each of these services is typical in a case of this type.

b. *The novelty and difficulty of the questions.* Defense of the theft claim concerning confidential information did not involve any particularly difficult issues, but did involve learning the employee benefits advisory business and how confidential information is kept, as well as Plaintiff's alleged trade secrets. The defense also involved responding to discovery and attending numerous depositions wherein Plaintiff tried to prove (unsuccessfully) that Ms. Hooper used or disclosed Plaintiff's confidential, proprietary and/or trade secret information and/or that having such information cause Plaintiff millions of dollars in damages.

c. *The skill requisite to perform the legal services properly.* This case required standard legal services: preparing pleadings, drafting several motions and responses (including summary judgment), preparing discovery and responding to discovery, taking several depositions, arguing several hearings regarding modifying, extending, and/or violating the temporary injunction, discovery issues, sealing court records, arguing two temporary injunction hearings, and trying the case to a jury. A review of the record demonstrates an appropriate level of competence and expenditure of time and effort by Ms. Hooper's counsel. No unusual skill was required.

d. *The preclusion of employment by the attorney due to his or her acceptance of the case.* I was not precluded from other employment in any significant way.

e. *The customary fees.* For this case, Gardere charged Ms. Hooper a customary fee for my services that ranged from $380.00, to $395.00 to $405.00 per hour for attorney time over a twenty-six month period. I used a junior associate to assist me for much of the case and his rate per hour ranged from $290.00 to $320.00. I also utilized paralegals where appropriate whose rates per hour ranged from $210.00 to $235.00. These amounts are customary and appropriate fees for the services rendered, and are reflected in the attached invoices.

f. *Whether the fees are fixed or contingent.* The fee is a fixed hourly rate fee.

g. *Time limitations imposed by the client or the circumstances.* The client did not impose any unusual time limits.

h. *The amount involved and the results obtained.* Plaintiff sought approximately $700,000.00 in actual damages and $3,000,000.00 in punitive damages from Ms. Hooper. Ms. Hooper successfully defended Plaintiff's theft of confidential information claim on directed verdict. Plaintiff obtained approximately $38,000 from the jury on its other claims.

i. *The experience, reputation and ability of the attorneys.* I have eight years of litigation experience. I have argued before the Texas Supreme Court, tried cases, and argued numerous summary judgment motions and several temporary injunction hearings. I have been recognized as a Texas Rising Star in business litigation by Texas Monthly magazine the last two years. I am well respected within my firm. I like to believe I have a good reputation and have good ability.

j. *The "undesirability" of the case.* Ms. Hooper is a good and desirable client.

k. *The nature and length of the professional relationship with the client.* This is the first matter I have been retained on to represent Ms. Hooper.

8. Ms. Hooper has incurred $414,714.75 in attorneys' fees, plus court costs and other legal expenses totaling $18,886.86 for services rendered in connection with successfully defending Plaintiff's theft of confidential and proprietary information claim under the TTLA. I determined the fees by reviewing the legal invoices and costs attached hereto and segregating the fees into three parts as follows:

a. First, I determined which fees related to time spent on the case (i.e. discovery, pleadings, or hearings) that had nothing to do with Plaintiff's claim concerning Ms. Hooper's non-payment of outside commissions. For instance, Plaintiff's original petition, the first temporary injunction hearing, the motion to modify the temporary injunction, the motion to extend the temporary injunction, the motion to seal court records, the motion to strike Dawn Brinson as an expert on lost profits, the computer

forensics on Ms. Hooper's laptop, the depositions of all the Holmes Murphy & Associates people, the depositions of Door Control Services and Plano Sports Authority, the deposition of Gary Durham (Ms. Hooper's lost profits expert), etc. had nothing to do with outside commissions and instead related to the misappropriation and theft of confidential, proprietary, and trade secret information that Plaintiff attempted to prove Ms. Hooper used and/or disclosed that allegedly caused it to lose a prospect and several clients that Plaintiff sought future lost profits for. The time spent to defend the theft of such information, in addition to misappropriation of trade secrets, conversion of such information, and breach of fiduciary duty regarding such information (i.e. allegedly using such information to try and obtain Door Control Services as a client) is inextricably intertwined and difficult, if not impossible, to segregate. I determined that the reasonable and necessary attorneys' fees for defending the theft of this alleged confidential, proprietary and/or trade secret information on specific tasks that had nothing to do with outside commissions is $102,978.00. The cost associated with the depositions identified above, and expert fees and court reporter costs, is $18,886.86. The fees segregated from each invoice that are recoverable as attorneys' fees that have nothing to do with outside commissions are as follows:[1]

| Invoice #1082257 | $56,383.00 |
|---|---|
| Invoice #1085277 | $15,627.00 |
| Invoice #1088314 | $1,921.00 |
| Invoice #1092207 | $1,711.00 |
| Invoice #1100688 | $3,222.00 |
| Invoice #1103063 | $0 |
| Invoice #1106706 | $1,640.00 |
| Invoice #1109091 | $1,056.00 |
| Invoice #1112287 | $4,824.00 |
| Invoice #1115930 | $1,600.00 |
| Invoice #1122003 | $4,127.00 |
| Invoice #1130727 | $2,370.00 |
| Invoice #1141317 | $6,715.00 |
| Invoice #1162635 | $1,782.00 |
| Invoice #1164002 | $0 |
| Total | $102,978.00 |

b.  Second, I determined that the remaining fees in this case concerned a mix of time spent on (i) Plaintiff's confidential/proprietary/trade secret and fiduciary duty claims concerning lost profits, (ii) Plaintiff's nonpayment of outside commission claims, and (iii) Ms. Hooper's breach of contract

---

[1] The first invoice has the highest recoverable amount of fees of all invoices because non-payment of outside commissions was not an issue at that time. The other invoices show fees for time spent on specific tasks that had nothing to do with outside commissions.

**AFFIDAVIT OF JAMES C. SCOTT**                                    PAGE 5

counterclaim. The time spent on the joint tasks concerning the first two items is difficult to segregate but I determined that 75% of the time was spent on the confidential/proprietary/trade secret and fiduciary duty claims concerning lost profits and 20% of the time was spent on the non-payment of outside commission claims (see below regarding remaining 5%). Thus, I determined that based on that percentage, the reasonable and necessary attorneys' fees for defending the theft of the alleged confidential, proprietary and/or trade secret information is $311,736.75.

c. Finally, I determined that 5% of this case related to Ms. Hooper's counterclaim for breach of contract for which no fees are recoverable and segregated that time out.

The work done (and to be done) was both reasonable and necessary for this case's needs. And, the rates charged are reasonable rates in Texas for this type of case and counsel of this caliber. Plaintiff sought approximately $4,000,000.00 in damages from Ms. Hooper, thus $414,714.75 ($102,978 + $311,736.75) in attorneys' fees is reasonable. All of this work relates to a claim for which attorneys fees are recoverable.

9. Based upon a consideration of the *Arthur Anderson* factors, including the nature of this case, my experience, as well as my familiarity with the work performed in this case, including the review of all the pleadings, exhibits, records and Gardere's invoices, my knowledge of similar type cases, and the hourly billable rates charged by Gardere for its services, it is my opinion that attorneys' fees totaling $414,714.75, plus court costs and other legal expenses totaling $18,886.86 are fair, reasonable and necessary fees and costs for the legal services rendered in successfully defending Plaintiff's theft of confidential and proprietary information claim under the TTLA.

10. Further, I am familiar with the reasonable and customary charges for appeals to the Court of Appeals and writs of error to the Supreme Court of Texas. In my opinion a reasonable and customary charge for the services to be performed by the Gardere law firm in the event of an appeal to the Court of Appeals is $15,000.00. Furthermore, in my opinion a reasonable and customary charge for the services to be performed by the Gardere law firm in the event that a writ of error in the Supreme Court of Texas is filed is $10,000.00.

Further, Affiant sayeth not.

James C. Scott

SUBSCRIBED AND SWORN TO BEFORE ME on this 16 day of October, 2014, to certify which witness my hand and official seal of office.

ABBIE HOLZMEISTER
Notary Public
State of Texas
My Comm. Expires 06-24-2017

Notary Public in and for the State of Texas

AFFIDAVIT OF JAMES C. SCOTT